1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MANUELA F. BALTAZAR, | ) | Case No. CV 11-8018-JEM |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION AND ORDER |
| v. | ) | REVERSING DECISION OF THE |
| | ) | COMMISSIONER OF SOCIAL SECURITY |
| MICHAEL J. ASTRUE, | ) | AND REMANDING FOR FURTHER |
| Commissioner of Social Security, | ) | PROCEEDINGS |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PROCEEDINGS**

On October 6, 2011, Manuela F. Baltazar ("Plaintiff") filed a Complaint seeking review of the decision by the Commissioner of the Social Security Administration  ("Commissioner") denying her application for Social Security Disability Insurance benefits.  The Commissioner filed an Answer on February 24, 2012.  On May 10, 2012, the parties filed a Joint Stipulation ("JS").  The matter is now ready for decision.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before the undersigned Magistrate Judge.  After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision must be reversed and remanded for further proceedings in accordance with this Memorandum Opinion and Order and with law.

**BACKGROUND**

Plaintiff was born on June 27, 1949, and was 53 years old on her alleged disability onset date of May 8, 2003.  (AR 55, 59.)  Plaintiff filed an application for Social Security Disability Insurance benefits on March 25, 2004 (AR 55-58), and claims she is disabled due to a back injury.  (AR 86.)  Plaintiff has not engaged in substantial gainful activity since her alleged disability onset date.  (AR 24, 86.)

Plaintiff's claim was denied initially on August 19, 2004.  (AR 42-47.)  Plaintiff then filed a timely request for hearing on October 6, 2004.  (AR 48.)  Plaintiff appeared with counsel and testified at a hearing held on January 19, 2006, before an Administrative Law Judge ("ALJ").  (AR 397-422.)  The ALJ issued a decision denying benefits on May 16, 2006. (AR 21-25.)  After the Appeals Council denied review (AR 5-7), this Court vacated the Commissioner's decision and remanded for further proceedings.  (AR 443-59.)

On remand, a different ALJ, David Marcus, conducted a hearing at which Plaintiff appeared with counsel and testified.  (AR 639-68.)  The ALJ issued a decision denying benefits on March 1, 2010.  (AR 434-42.)  On July 14, 2011, the Appeals Council declined to assume jurisdiction over the ALJ's decision.  (AR 423-25.)  Plaintiff then filed this action.

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, there are two disputed issues:  whether the ALJ properly evaluated the opinions of (1) treating physician Dr. Smith, and (2) examining physician Dr. Kadaba.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla,' but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotation marks and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld.  Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).  "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"  Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

## THE SEQUENTIAL EVALUATION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d) (1)(A), 1382c(a)(3)(A).  The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  If the claimant is engaging in substantial gainful activity, disability benefits will be denied.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987).  Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments.  Parra, 481 F.3d at 746.  An impairment is not severe if it does not significantly limit the claimant's ability to work.  Smolen, 80 F.3d at 1290.  Third, the ALJ must determine whether the impairment is listed, or equivalent to an

1  impairment listed, in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix I.  Id.  If the

2  impediment meets or equals one of the listed impairments, the claimant is presumptively

3  disabled.  Bowen v. Yuckert, 482 U.S. at 141.  Fourth, the ALJ must determine whether the

4  impairment prevents the claimant from doing past relevant work.  Pinto v. Massanari, 249

5  F.3d 840, 844-45 (9th Cir. 2001).  Before making the step four determination, the ALJ first

6  must determine the claimant's residual functional capacity ("RFC").[1]  20 C.F.R. § 416.920(e).

7  The RFC must account for all of the claimant's impairments, including those that are not

8  severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p.  If the

9  claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ

10  proceeds to the fifth step and must determine whether the impairment prevents the claimant

11  from performing any other substantial gainful activity.  Moore v. Apfel, 216 F.3d 864, 869 (9th

12  Cir. 2000).

13          The claimant bears the burden of proving steps one through four, consistent with the

14  general rule that at all times the burden is on the claimant to establish his or her entitlement

15  to benefits.  Parra, 481 F.3d at 746.  Once this prima facie case is established by the

16  claimant, the burden shifts to the Commissioner to show that the claimant may perform other

17  gainful activity.  Lounsbury v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To support a

18  finding that a claimant is not disabled at step five, the Commissioner must provide evidence

19  demonstrating that other work exists in significant numbers in the national economy that the

20  claimant can do, given his or her RFC, age, education, and work experience.  20 C.F.R. §

21  416.912(g).  If the Commissioner cannot meet this burden, then the claimant is disabled and

22  entitled to benefits.  Id.

23

24

25

26          [1] Residual functional capacity ("RFC") is what one "can still do despite [his or her]
27  limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R.
    §§ 404.1545(a)(1), 416.945(a)(1).
28

**THE ALJ'S DECISION**

In this case, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity from her alleged disability onset date of May 8, 2003, through her date last insured of December 31, 2008.  (AR 436.)

At step two, the ALJ determined that Plaintiff suffers from the following severe impairments:  cervical sprain with radiculopathy, thoracic strain, bilateral shoulder synovitis with impingement, bilateral wrist synovitis with mild carpal tunnel syndrome, and lumbosacral strain with radiculopathy.  (AR 436-37.)

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.  (AR 437.)

The ALJ found that Plaintiff has the RFC to perform light work "except [Plaintiff] can lift and carry 25 pounds occasionally, 10 pounds frequently, can stand and walk six hours of an eight hour day, can sit six hours of an eight hour day, is limited to frequent bending, stooping, squatting, kneeling, gripping and grasping, is precluded from reaching above shoulder level, and is precluded from sitting with the neck and back in a fixed position for more than six hours in an eight-hour workday."  (AR 437-38.)

At step four, the ALJ determined that Plaintiff could perform her past relevant work as a preschool teacher and receptionist.  (AR 441.)  The ALJ therefore concluded that Plaintiff is not disabled.  (AR 441-42.)

**DISCUSSION**

**The ALJ Improperly Evaluated Dr. Smith's and Dr. Kadaba's Opinions**

Plaintiff argues that the ALJ improperly assessed the opinions of Drs. Smith and Kadaba.  These physicians evaluated Plaintiff under the rubric of the California Workers' Compensation system, and Plaintiff argues that the ALJ did not accurately translate the limitations assessed by these physicians into her RFC assessment.  The Court agrees.

1  **A.    Relevant Law**

2      In evaluating medical opinions, the case law and regulations distinguish among the

3  opinions of three types of physicians:  (1) those who treat the claimant (treating physicians);

4  (2) those who examine but do not treat the claimant (examining physicians); and (3) those

5  who neither examine nor treat the claimant (non-examining, or consulting, physicians).  See

6  20 C.F.R. §§ 404.1527, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).

7  In general, an ALJ must accord special weight to a treating physician's opinion because a

8  treating physician "is employed to cure and has a greater opportunity to know and observe

9  the patient as an individual."  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)

10  (citation omitted).  If a treating source's opinion on the issues of the nature and severity of a

11  claimant's impairments is well-supported by medically acceptable clinical and laboratory

12  diagnostic techniques, and is not inconsistent with other substantial evidence in the case

13  record, the ALJ must give it "controlling weight."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

14      Where a treating doctor's opinion is not contradicted by another doctor, it may be

15  rejected only for "clear and convincing" reasons.  Lester, 81 F.3d at 830.  However, if the

16  treating physician's opinion is contradicted by another doctor, such as an examining

17  physician, the ALJ may reject the treating physician's opinion by providing specific, legitimate

18  reasons, supported by substantial evidence in the record.  Id. at 830-31; see also Orn, 495

19  F.3d at 632; Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Where a treating

20  physician's opinion is contradicted by an examining professional's opinion, the Commissioner

21  may resolve the conflict by relying on the examining physician's opinion if the examining

22  physician's opinion is supported by different, independent clinical findings.  See Andrews v.

23  Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Orn, 495 F.3d at 632.  Similarly, to reject an

24  uncontradicted opinion of an examining physician, an ALJ must provide clear and convincing

25  reasons.  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).  If an examining

26  physician's opinion is contradicted by another physician's opinion, an ALJ must provide

27  specific and legitimate reasons to reject it.  Id.  However, "[t]he opinion of a non-examining

28

physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician"; such an opinion may serve as substantial evidence only when it is consistent with and supported by other independent evidence in the record.  Lester, 81 F.3d at 830-31; Morgan, 169 F.3d at 600.

The physicians whose opinions are at issue here evaluated Plaintiff as part of her workers' compensation case.  The terms of art used in California workers' compensation cases are not equivalent to Social Security disability terminology, but an ALJ may not ignore physicians' opinions from a workers' compensation case.  Booth v. Barnhart, 181 F. Supp. 2d 1099, 1104-05 (C.D. Cal. 2002); see Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988).  Instead, the ALJ must "translate" terms of art contained in these physicians' reports and opinions into corresponding Social Security terminology. Booth, 181 F. Supp. 2d at 1106; see Macri v. Chater, 93 F.3d 540, 543-44 (9th Cir. 1996).

**B.    Dr. Smith's Opinion**

Dr. Smith evaluated and treated Plaintiff numerous times throughout her workers' compensation case, and wrote a permanent and stationary report dated February 25, 2004. (AR 366-76.)  Dr. Smith diagnosed Plaintiff with musculoligamentous strain of the cervical and lumbosacral spine, bilateral shoulder impingement syndrome, bilateral epicondylitis, and bilateral carpal tunnel syndrome.  (AR 372.)  He assessed Plaintiff with the following work restrictions:

- With respect to her neck and shoulders, Plaintiff could perform "no heavy work" and could not work "at or above shoulder height to prevent neck and shoulder girdle pain."  (AR 373.)

- With respect to her lower back, Plaintiff could perform "no heavy work.  This restriction is a prophylactic restriction . . . [and] precludes this patient from heavy lifting and repetitive bending and stooping or from prolonged sitting to prevent low back pain."  (AR 373-74.)

1          •      With respect to her shoulder, Plaintiff could perform "no heavy work.  This

2                 restriction is a prophylactic restriction . . . [and] precludes this patient from

3                 reaching upward, outward, and behind on a repetitive basis to prevent pain in

4                 the right shoulder and the left shoulder."  (AR 374.)

5          •      With respect to her elbows, hands, and wrists, Plaintiff could perform "no heavy

6                 work.  This restriction is a prophylactic restriction . . . [and] precludes the

7                 patient from jobs requiring repetitive use of the right and left hand as with

8                 operating a computer terminal or with packing in a factory situation."  (AR 374-

9                 75.)

10   Dr. Smith opined that Plaintiff "cannot and should not return to her old employment" as a

11   preschool teacher.  (AR 375.)

12          Plaintiff contends primarily that the ALJ failed to accurately translate some of Dr.

13   Smith's findings from his workers' compensation evaluation into functional limitations in

14   Plaintiff's RFC.  Specifically, Plaintiff argues that Dr. Smith's opinion precluding her from

15   "repetitive" bending, stooping, reaching, and using her hands is inconsistent with the ALJ's

16   determinations that Plaintiff can perform "frequent" bending, stooping, squatting, kneeling,

17   gripping and grasping, and that Plaintiff had no limitations in reaching aside from being

18   restricted from reaching above shoulder level.  Plaintiff points out, as the ALJ noted (AR 439)

19   that "a preclusion from repetitive activity for California workers' compensation purposes

20   contemplates a 50% reduction in capacity."  (JS 9 (citing Schedule for Rating Permanent

21   Disabilities (Labor Code of California 1997), www.dir.ca.gov/dwc/PDR1997.pdf).)  The

22   Commissioner does not dispute this point.  (See JS 10-12.)  Thus, assuming Plaintiff's pre-

23   injury capacity to perform these activities was 100%, she could perform them no more than

24   50% of the time in Dr. Smith's opinion.  As Plaintiff points out, "frequent" for Social Security

25   purposes means from one-third to two-thirds of the time.  (JS 9 (citing SSR 83-10).)  Thus,

26   Plaintiff does not possess the RFC to perform these activities frequently because she is not

27   capable of doing them between one-half and two-thirds of the time.

28

1    Plaintiff's argument is persuasive.  Her RFC is "the most [she] can still do despite [her]

2  limitations."  20 C.F.R. § 404.1545(a)(1).  According to Dr. Smith, Plaintiff cannot perform

3  "frequent" bending, stooping, squatting, kneeling, gripping and grasping because she cannot

4  perform those activities more than half of the time.  Thus, the ALJ implicitly rejected this

5  aspect of Dr. Smith's opinion.

6    The rejection stands if the ALJ provided specific and legitimate reasons to support it.

7  He did not.  The only reason the ALJ provided for discounting Dr. Smith's findings was his

8  assertion that

9    [t]he use of "prophylactic restrictions" in a worker's compensation case is not

10    synonymous with an inability to perform the function. . . .  If there is no

11    evidence of record to support the general conclusion of the physician that the

12    employee's condition will somehow worsen if she violates the restriction, or if

13    the prophylactic restriction generally is contrary to the entire record and the

14    inferences which may be reasonably drawn therefrom, a finding of permanent

15    disability based upon such a restriction will not be upheld.

16  (AR 439.)  Neither the ALJ nor the Commissioner cites any authority to support this

17  proposition.  Even if it were an accurate statement of the law, it does not constitute a specific

18  and legitimate reason to reject Dr. Smith's opinion in this case.  The ALJ's assertion that the

19  prophylactic limitations imposed by Dr. Smith are not supported by the record does not reach

20  the level of specificity required to reject the opinion of a treating physician.  See Embrey v.

21  Bowen, 849 F.2d 418, 421 (9th Cir. 1988) ("To say that medical opinions are not supported

22  by sufficient objective findings or are contrary to the preponderant conclusions mandated by

23  the objective findings does not achieve the level of specificity our prior cases have required,

24  even when the objective factors are listed seriatim.").  In addition, the ALJ's assertion is

25  incorrect.  At least one other physician, Dr. Kadaba, found that Plaintiff was "precluded from

26  repetitive bending, stooping, squatting, kneeling, gripping, grasping, lifting and carrying more

27  than 25 pounds and reaching to above the shoulder levels."  (AR 615.)  Moreover, both Dr.

28

Smith and Dr. Kadaba reviewed Plaintiff's voluminous medical records before reaching their conclusions.  (AR 369-72, 600-14.)  Thus, the ALJ's conclusory assertion that Dr. Smith's opinion was contrary to the record does not constitute a specific and legitimate reason to reject his opinion.

### C.    Dr. Kadaba's Opinion

Dr. Kadaba performed a comprehensive orthopedic qualified medical evaluation of Plaintiff on June 10, 2009.  (AR 588-619.)  He "continued to find the pathologies related to [Plaintiff's] work injuries" (AR 613) and opined:

> [Plaintiff] is precluded from prolonged standing and walking, prolonged sitting with her neck and back bending over in a fixed position.  She is precluded from repetitive bending, stooping, squatting, kneeling, gripping, grasping, lifting and carrying more than 25 pounds and reaching to above the shoulder levels.  She cannot return to her original job.  She should have access to job disability benefits.

(AR 615.)

As with Dr. Smith, Plaintiff contends that the ALJ failed to translate accurately Dr. Kadaba's opinion that she was precluded from performing "repetitive" activities into functional limitations in her RFC assessment.  For the reasons explained above, Plaintiff is correct.  The ALJ implicitly rejected that aspect of Dr. Kadaba's opinion because an individual capable of performing "frequent" activities for Social Security purposes is capable of performing more than "repetitive" work for California workers' compensation purposes.  The ALJ provided no rationale for rejecting Dr. Kadaba's opinion.  (See AR 440.)  Accordingly, the ALJ's evaluation of his opinion was improper.

### D.    Remedy

Plaintiff urges the Court to reverse the Commissioner's decision and order the immediate payment of benefits.  Such a remedy is proper where "further administrative proceedings would serve no useful purpose" because "it is clear from the record that the ALJ would be required to find the claimant disabled."  See Smolen, 80 F.3d at 1292.  The Court

cannot make that determination in this case.[2]  Moreover, it is not straightforward to translate workers' compensation terminology into meaningful limitations for Social Security purposes. See Desrosiers, 846 F.2d at 576 ("The categories of work under the Social Security disability scheme are measured quite differently.").  Accordingly, the ALJ should be afforded another opportunity to evaluate Drs. Smith's and Kadaba's opinion consistent with this Memorandum Opinion and Order and with law.

**ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner of Social Security is REVERSED and REMANDED for further proceedings in accordance with this Memorandum Opinion and Order and with law.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: June 19, 2012                                   */s/ John E. McDermott*
                                                                JOHN E. MCDERMOTT
                                                                UNITED STATES MAGISTRATE JUDGE

---

[2]The Court observes that, if Drs. Smith's and Kadaba's limitations are accepted, the ALJ may find that Plaintiff is capable of performing the functional limitations at issue here only occasionally, not frequently.  In that case, the VE testified that Plaintiff would not be capable of performing her past relevant work (AR 667), and the ALJ would be required to proceed to step five of the sequential evaluation.